# UNITED STATES DISTRICTS COURT for the DISTRICT of CONNECTICUT

## NEW HAVEN

## AFFIDAVIT OF ILLEGAL DICSRIMINATORY PRACTICE

3:18cv563(VAB)

| | |
|---|---|
| My name is | **RYSZARD WALCZAK** |
| My address is | 91 MIDLAND DR. |
| My mailing address is | MERIDEN, CT06450 |
| My email address is | walczak@cox.net |
| The respondent is | **PRATT & WHITNEY** |
| Whose business address is | 400 MAIN STR, EAST HARTFORD, CT 06108 |



**I was …**

\*Terminated on 04/19/2016.

\*Discriminated against in terms and conditions of employment on diverse dates thru and including April 19, 2016.

\*Discriminated against my ancestry and origin of Poland.

\* Denied equal treatment in the terms and conditions of my employment based on my gender (sex) male as a protected class.

\* Retaliated

**I believe** that respondent violated the following statutes and acts listed below:

\*CONN. GEN.STAT.& 46a-60(a)(1)

\*Title VII of the Civil Rights Act of 1964, 42 U.S.C. & 2000e-2 (cite for 15 or more individuals employed) and the Civil Rights Act of 1991.

\*As enforced through Conn. Gen. Stats. &46-58 (a).

\*Section 704 (a) of the Civil Rights Act of 1964- shall be unlawful for an employer to discriminate of his employee because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing this title.

**I provide following in particulars:**

1.  My name is Ryszard Walczak and I live at Midland Drive in Meriden, CT 06450. My country of origin is Poland and I am Polish descent.

2.  The Respondent is Pratt & Whitney and their business address is 400 Main Street in East Hartford, CT 06108. They employ more than 20 people.

3.  Pratt & Whitney and its agents violated Title VII of the Civil Rights Act of 1964 (Title VII), which prohibits employment discrimination based on race, color, religion, sex, or national origin.

4. Punitive damages are appropriate as the employer engaged in outrageous misconduct, bad faith, and malice by using the false, fabricated statements to terminate my employment. Punitive damages should be imposed and publicized and serve as a deterrence to the other worldwide corporations.

5. I was suspended on April 11, 2016.

6.  I was terminated on April 19 ,2016 for illegal reasons in the eyes of the law.

7. My damages are severe and include but are not limited to the defamation of my character causing professional and personal impacts as well as mental anguish.

8. My annual salary averaged $95,000.00 per year.

9.  My pension plan was lost. The pension plan in average pays at the age of retirement $ 72.00 per year of credited service. 8 years of my service accumulated amount of $ 595.00 per month for the lifetime pay. Another 10 years of my work will add at least another $ 700.00 to my pension and would be in total around $ 1300.00 per month for the lifetime.

10. My total loses to date exceed $200,000.00.

11.  I worked for Respondent as a Quality Inspector since 2008.

12. I was never disciplined. I had been a good employee and had received over five cash awards for some excellent job performances. See Exhibit A.

13. Organized workplace bullying began in 2011 on the anniversary of the terrorist attacks which occurred on 9/11/01.

14. Michelle Bosse, my co-worker, was watching news on her computer.

15. I said," every year we should commemorate this event less and less because this is rubbing more salt to our wounds."

16. Bosse and her friend, another co-worker named Martin Barbosa, became very angry over this statement.

17. That began a pattern of harassment which I endured until my termination. See Exhibit B.

18. Martin Barbosa began to antagonize co-workers against me and organized a mob of approximately twelve other employees to make derogatory comments about Poles, my nation of origin. The mob would whistle and spit in front of me.

19. Constant, every day bullying escalated gradually over time. My co -workers would spit in front of me, whistle very loudly next to me using two fingers or whistle like calling a dog. See Exhibit C. Also, they were using air horns or pop paper bags behind my shoulder. On recurring bases, they will also make statements or jokes in my presence of being Polish by calling me "smelly Polish" Last page, Exhibit C, "KGB agent "or making jokes from my Jewish ancestry.

20.  The group followed me everywhere in a stalking manner. They followed me at the workstations, to the men's room, and even out to the parking lot. They kept on bullying and intimidating me on daily basis.

21. Bullying is deeply rooted at Pratt & Whitney. Several other employees articulated the same opinion on the company's bullying internal blog. See Exhibit D.

22.  Over the course of 5 years I did file with the human resources department and Ombudsman program more than 20 complaints pleading to stop the harassment, but the response was weak and only made the situation worse.

23. I offered to transfer to different building and different shift to avoid bullying and start fresh. The pattern continued despite my best efforts. I feel I have done everything I could to make the situation better, but Respondent has failed to adequately address and correct the workplace bullying I have been experiencing.

24.  The situation became worse when two Union Stewards joined the bullying team. One of them, Scott Czarnota became very aggressive. He was following me very often in a stalking manner whistling with his fingers or making sound like calling a dog in very demeaning way. Most of the time he was doing this in front of the other people at the very end of the shift at the clocking area. He was constantly looking to escalate the problem and retaliate against me because he knows I filed at least four complaints before and nothing happened to him. See Exhibit E.

25. On April 11,2016 I was informed that I was being suspended pending an investigation into allegation that I had threatened a female co-worker Diane Holloman. This is totally untrue. Her statement was fabricated and designed to terminate me. Her defamatory, untrue statement led to my termination a week later. I never threatened any employee. This complaint took me by surprise and I couldn't understand why she made this up. Holloman wasn't someone I normally worked with, and she had come to sit at a desk next to mine that had not been occupied for a long time. See my statement Exhibit F, page 2 and Exhibit K.

26.  One month before my termination during a meeting with the human resources manager Gary Nester, he threatened me with the disciplinary actions if I filed additional complaints. I

shared this information by sending a letter to the Company Headquarters in Farmington, CT. In retaliation HR Manager Gary Nester fired me based on the false allegations. See Exhibit G.

27. As a male I had complained for 4 years sending more than 20 harassment complaints without any disciplinary actions taken by Respondent. At the end I was terminated based on one single untrue complaint coming from one women. I considered this to be pure retaliation and gender discrimination.

28. Since 2014, I had a long history of being harassed by two Union steward Scott Czarnota and Erie Fordham. I filed several harassment complaints with Human Resources because I was getting harassed by a group of coworkers. The leader of that group was Scott Czarnota. Czarnota would walk by me and would whistle loudly into my ear or whistle like dog calling in style. Czarnota tried to get other coworkers to participate in this. There were about 8 to 10 other coworkers, who would occasionally target me, but Czarnota was the main person who consistently targeted me. HR took no action to stop Czarnota's harassment of me; it continued until the date I was terminated.

29. The Union filed a grievance over my termination in May 2016.

30. Towards the end of 2016, we had our arbitration hearing that took 4 sessions. I testified very briefly during the last session but I was not asked sufficient and appropriate questions that offered me the opportunity to explain my side of the story, such as the incident with Holloman which led to my termination.

31. It is my belief that the Union intentionally prevented me from defending myself for filling complaints against Union stewards.

32. I also believe the Union breached its duty of fair representation. A Union has considerable discretion in controlling the grievance and arbitration procedure. The Union failed to represent me properly and exercised poor judgment.

33. During the Arbitration, testimony was offered behind closed doors. I was kept in a separate room and the testimony was concealed from me. I was asked to leave the room every time someone testified. Exhibit F, page 3.

34.I have a right to inspect the file and examine the evidence. I have a Constitutional right to listen to all testimony, including adverse testimony. How I can defend myself if I don't even know who is testifying against me and what is being said. The CHRO Principal Attorney, Charles Krich termed these practices in its letter as a "GRAVE ERRORS" and found that prohibiting me from listening to the adverse testimony as a breach of law. See an answer to CHRO.

35.  Witnesses who had been harassing me testified during my termination arbitration that I had harassed them. I had not harassed any of them, because I was just following the Employer's Harassment -Free policy from June 6, 2006 by telling them to stop. Again, their testimony was concealed from me. 36.   In (3) other cases, non –Polish employees who made actual threats were not disciplined for conduct that was more egregious than the conduct for which I was disciplined. See Exhibit H.

37. These other employees were referred to the Employee Assistance Program (EAP) for a mandatory evaluation after which they were brought back to work.

38. The allegation against me were false and fabricated.

39. The Company discriminated against me and rushed too quickly to retaliate and terminate my job without regular procedures.

40. There exists evidence of differential treatment of similarly situated employees which demonstrate that the employer was motivated by discriminatory animus which is sufficient to raise an inference of discrimination.

41.  Two months before my termination, I filed a grievance claiming that the employer did not pay me a shift differential for more than 2 years, the value of which exceeded $30,000.00 in retroactive pay. The case was valid and rightful according to the Union and was waiting for an Arbitration. In the interim, the employer refused to pay the retroactive wages and fired me based on the false accusations.

42. My success would have served as precedent for other employees to file similar requests for unpaid wages; consequently, the company decided to terminate my employment. The

retroactive wage case #162 is awaiting an arbitration date since January of 2016 and remains unresolved.

43. At the conclusion of the most recent negotiation session, the employer offered a settlement sum of $80,000.00. I did not accept this offer because I did nothing wrong to be terminated. Accepting this offer would be like admitting wrongdoing.

44. On January 26, 2017, the arbitrator issued his decision and ruled against me on my termination; the decision was rendered without full evidentiary process.

45 In April 2016, I filed a complaint to EEOC and CHRO based upon discrimination of national origin/retaliation/gender discrimination Thereafter, I amended my compliant to include discrimination based upon national origin and retaliation and asserted that I was denied equal treatment in the terms and conditions of my employment based upon my gender(sex) male; gender is a protected class.

46. CHRO adopted an adverse arbitration finding despite my statements of flaws and unfairness in the arbitration process and its dismissal for no reasonable cause.

47. Soon after, I appealed the decision asking for a reconsideration. The Regional CHRO office in Norwich lost the documentation relative to the fact-finding and sent the file to the CHRO headquarters without the fact -finding documents. CHRO Principal Attorney admitted that fact-finding-documents had been lost and decided to reject my motion for the reconsideration. See Exhibit J.

48. On January 18, 2018, EEOC adopted the findings of the agency and issued Notice of Suit Rights.

49. I have been discriminated against, retaliated against, and denied equal treatment based upon the terms and conditions of my employment. I was subsequently terminated because of my gender and my national origin / ancestry as I am Polish and Jewish.

I request the United States District Court to find in my favor that I was denied my rights as guaranteed to me under the above cited laws and to secure for me any remedy to which I may be entitled.

Sincerely,

Ryszard Walczak

04-04-2018