# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

RYSZARD WALCZAK,
*Plaintiff*,

v.

No. 3:18-cv-563 (VAB)

PRATT & WHITNEY, A DIVISION OF
UNITED TECHNOLOGIES
CORPORATION,
*Defendant.*

## RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT

Ryszard Walczak ("Plaintiff"), proceeding *pro se*, has sued Pratt & Whitney, a Division of United Technologies Corporation ("Defendant"), for discrimination and retaliation on the basis of gender and national origin or ancestry in violation of the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60 *et seq*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq* ("Title VII").

Pratt & Whitney has moved for summary judgment as to all claims.

For the following reasons, Pratt & Whitney's motion for summary judgment is

**GRANTED.**

The claims under Title VII will be dismissed, and t he Court declines to exercise supplemental jurisdiction over his remaining claims under state law.

# I.    FACTUAL AND PROCEDURAL BACKGROUND

## A.  Factual Background

Mr. Walczak, a man of Jewish faith originally from Poland, began work at Pratt & Whitney on February 4, 2008. L. R. 56(a)1 Statement of Undisputed Material Facts, ECF No. 44 ¶¶ 1, 8 (May 6, 2019) ("Def.'s SMF"); Pl.'s Statement of Undisputed Material Facts, ECF No. 56-2 ¶ 1 (June 6, 2019) ("Pl.'s SMF-Add'l Facts").

Pratt & Whitney, an unincorporated division of United Technologies Corporation, is an aerospace manufacturer that produces aircraft engines for military and civil aviation. Def.'s SMF ¶ 2. Pratt & Whitney maintains an equal employment opportunity policy, which prohibits discrimination based on all legally protected characteristics. *Id.* ¶ 3. Pratt & Whitney also maintains a harassment-free workplace policy; a non-retaliation policy; and a workplace violence policy, which prohibits violence and threatening behavior. *Id.* ¶¶ 4, 6. Employees have numerous channels for reporting complaints or concerns about alleged discrimination or violations of these policies. *Id.* ¶ 4. Pratt & Whitney's Ombudsman office ("Ombudsman") is "a confidential channel for employees to seek guidance, as[k] questions, make comments[,] and report suspected misconduct outside of management." *Id.* The Ombudsman then investigates these concerns. *Id.* Employees may also report cocnerns directly to the harasser, a supervisor or manager, a Human Resources Representative, or Pratt & Whitney's EEO Manager. *Id.* Employees "engaged in actual or threatened workplace violence will be subject to appropriate disciplinary action, up to and including termination of employment." *Id.* ¶ 6.

All employees receive training on Pratt & Whitney's policies. *Id.* ¶ 7. Mr. Walczak had been informed of Pratt & Whitney's policies and the reporting procedures available to employees who had concerns about potential violations of these policies. *Id.* ¶ 5.

Mr. Walczak worked as a Lead Quality Assurance Inspector for Pratt & Whitney in Middletown, CT. *Id.* ¶ 8. In addition to inspecting manufactured aircraft engine parts, Mr. Walczak "was required to constantly interact with other inspectors, independent contractors, and employees." *Id.* Mr. Walczak's employment was subject to the terms of a collective bargaining agreement. *Id.* ¶ 9.

Complaints About Mr. Walczak Made to Pratt & Whitney

Beginning around September 2011, Mr. Walczak began to have conflicts with his peers. *Id.* ¶ 10. In all, he had eighteen altercations with Pratt & Whitney employees and contractors. *Id.* ¶ 22 (citing Ex. N: Altercations Chart, ECF No. 44-14).

On September 11, 2011, an incident occurred with Quality Assurance Inspector Michelle Bosse. *Id.* According to Ms. Bosse, while she listened to a 9/11 memorial, Mr. Walczak made offensive statements: "Why are you listening to this? Who cares? . . . Why don't you all just get over it, you Americans. People die all over the world every day." Ex. I: Arb. Hearing Tr., Volume II, ECF No. 44-9 at 61:23-63:9 (Aug. 5, 2016) ("Arb. Tr. II"). According to Mr. Walczak, he used different words: "as a nation, every year we should start celebrate [sic] less and less this event because this is just rubbing more and more salt to the open wounds . . . I didn't mean it to be disrespectful, just think about proportions, Poland during World War II lost 6 million . . . ." Ex. 7: Aff., ECF No. 44-4 at (June 6, 2019). Ms. Bosse reported this conduct to Pratt & Whitney. Arb. Tr. II at 65:9-18. The company later assigned Mr. Walczak to work in a different area of the same building. *Id.* at 67:1-20.

In October 2014, another Pratt & Whitney employee, Joel Boulay, reported that Mr. Walczak had "yelled" at him and made an inappropriate comment about his wife. Arb. Tr. II at 114:20-25, 117:1-25.

On April 14, 2015, Mr. Walczak confronted Michael McCormack, a Pratt & Whitney contractor, about alleged whistling: he "grabb[ed] onto Mr. McCormack's ID badge" and said, "We will get to know each other." Ex. O: Pratt & Whitney Threat Management Team Assessment Record, ECF No. 44-15 (Apr. 22, 2015) ("TMT Record – McCormack"). The incident required intervention by Pratt & Whitney's Threat Management Team, which recommended Mr. Walczak attend counseling with the Employee Assistance Program, but Mr. Walczak never went. *Id.*; Walczak Dep. at 83:21-23.

On April 8, 2016, Mr. Walczak had an exchange with another Pratt & Whitney employee, Scott Czarnota, who Mr. Walczak had reported for whistling at him in the past. Ex. P: Clifford Statement, ECF No. 44-16 (Apr. 11, 2016); *see* Ex. K (containing numerous e-mail complaints). Mr. Walczak also alleges that Mr. Czarnota was an union steward and part of the "bullying team," Pl.'s SMF – Add'l Facts ¶ 10, along with Irie Fordham, another union steward, Pl.'s Opp'n at 12. According to witness and Human Resources representative Gary Clifford, on that day, Mr. Walzcak commented "cuckoo" when he and Mr. Czarnota walked past. Clifford Statement. Then, Mr. Czarnota and Mr. Walczak exchanged verbal expletives, and Mr. Walczak made a "b-line" for Mr. Czarnota, where a shouting match began, and ended by Mr. Clifford "physically stepping between them." *Id.* According to Mr. Clifford, he had a conversation with Mr. Fordham about the event a couple days later, because Mr. Fordham had also witnessed the incident. *Id.* Mr. Fordham claimed that recently, Mr. Walczak had stated, "something bad was going to happen." *Id.*

On April 10, 2016, yet another employee, Diane Holloman, reported another interaction with Mr. Walczak. Ex. R: Arb. Tr., Volume I, ECF No. 44-18 at 82:14-23 (July 19, 2016) ("Arb. Tr. I"). Mr. Walczak "came into the workplace that morning and . . . came directly to [Ms.

Holloman's] work station." *Id.* She noted that he was "very irate" about "the light being turned on over his desk." *Id.* From about two feet away, he yelled and accused her of turning on the light, and asked who turned it on. *Id.* at 82:24-85:20. Ms. Holloman denied turning on the light, and told him that she did not know who turned it on. *See* Ex. Q: Holloman Statement, ECF No. 44-17 (Apr. 11, 2016). Nevertheless, Mr. Walczak continued to question and "verbally berate her for 15-20 minutes about the light being on." *Id.* Ms. Holloman "felt threatened because he had [her] boxed in." Arb. Tr. I at 83:22-24. In her report, Ms. Holloman stated she thought about calling the police or security, especially because she had witnessed and heard about his irate behavior with others. *Id.* at 84:8-85:5; *see also* Holloman Statement. At the later arbitration, Ms. Holloman also stated that on April 8, 2016, she had witnessed Mr. Walczak say to Mr. Czarnota: "Bang, bang, I'm gonna shoot you." Arb. Tr. I at 99:5-105:9 (also noting that Mr. Czarnota never reported this alleged incident).

On April 11, 2016, after receiving Ms. Holloman's report, the Threat Management Team determined that Mr. Walczak should be removed from the premises and suspended pending an investigation. Def.'s SMF ¶ 26. Pratt & Whitney suspended Mr. Walczak that same day. *Id.*

According to Mr. Walczak, "he was suspended and terminated based on one single untrue complaint coming from one female," which he considered as "pure retaliation and gender discrimination." Pl.'s SMF ¶ 3. He alleges that Ms. Holloman's report "was fabricated and designed to terminate [him]." Pl.'s SMF – Add'l Facts ¶ 22. According to Pratt & Whitney, "neither person had reported any prior issues with the other." Def.'s SMF ¶ 25.

<u>Complaints Made by Mr. Walczak to Pratt & Whitney</u>

Mr. Walczak alleges complaining on numerous occasions about bullying, racial comments, and discrimination beyond the thirty-three written complaints received by Pratt &

Whitney. Pl.'s SMF – Add'l Facts ¶ 13.

On July 1, 2013, Mr. Walczak sent an e-mail to Robert Behrens, Frank Dempsey, and Mr. Clifford, requesting a change in his shift in order to avoid the presence of his "oppressor," who is unnamed in the e-mail, Ex. 17, ECF No. 56-4, but who he alleges is Martin Barbosa. Pl.'s SMF – Add'l Facts ¶ 15.

On July 3, 2013, Mr. Dempsey responded and notified Mr. Walczak that he was being transferred to building 150 in order to "provide [him] a work environment free of harassment." Ex. 18, ECF No. 56-4. Mr. Walczak alleges that this reassignment was "against [his] will." Pl.'s SMF – Add'l Facts ¶ 16. He also alleges that this was an "[a]dverse action and retaliation," because, "despite . . . [his] medical condition, they sent [him] to the [only building] with concrete floors knowing . . . that this situation is worsening [his] health condition." Pl.'s SMF – Add'l Facts ¶ 17 (no citation to supporting documentation about his alleged medical condition). Mr. Walczak alleges he has "arthritis problems," which is why three years earlier he was moved from building 150. Pl.'s SMF – Add'l Facts ¶ 18 (citing Ex. 19, which is a typed letter addressed to "Medical Department at Pratt&Whitney" dated June 7, 2010).

Mr. Walczak alleges that soon after this reassignment, he sent a letter to the Ombudsman complaining about retaliation. Pl.'s SMF – Add'l Facts ¶ 19 (citing Ex. 20, an undated letter that begins "Hello Sir").

From 2014 to 2016, Mr. Walczak made numerous complaints to Pratt & Whitney about coworkers allegedly "harassing" him or being "very aggressive" towards him. *See* Ex. K, ECF No. 44-11 (dated Aug. 4, 2014 to Feb. 26, 2016) (containing various e-mails sent by Mr. Walczak complaining of conduct like "whistling," "teasing," and "stalking" and requesting "desk relocation so [he] can sit by [him]self"). Mr. Walczak complained about both Scott Czarnota and

Louis Gonzalez whistling at him "like calling a dog," which he perceived as harassment and aggression. *Id.* Mr. Walczak also alleged that Ms. Bosse, along with Mr. Barbosa, "initiated and organized bullying" of him. Ex. A: Walczak Dep., ECF No. 44-1 at 93:15-94:14 (Feb. 4, 2019).

Between August 4, 2014, to April 10, 2016, Mr. Walczak made at least thirty-three complaints to Pratt & Whitney's Human Resources Department, most of them to Human Resources representative Jessica (Haines) Ferreira. Def.'s SMF ¶ 14. Each time he made a complaint, Ms. Ferreira discussed them with him, investigated the complaint (usually about others whistling at him), and talked with the employees allegedly involved. Ex. J: Arb. Tr., Volume III, ECF No. 44-10 at 150:7-151:4 (Oct. 10, 2016) ("Arb. Tr. III"). According to Ms. Ferreira, "there was really no evidence found that there was any whistling occurring or any whistling at him in any harassing nature." *Id.* at 151:12-14. Shortly after the resolution of one investigation, Mr. Walczak would initiate a new complaint. *Id.* at 152:19-24 ("The volume [of Mr. Walczak's complaints] was enormous . . . by the time [Ms. Ferreira] finished investigating . . . one, another would would be reported . . . it was constant . . . .").

Ms. Ferreira encouraged Mr. Walczak at least six times to use the Employee Assistance Program, which is "a confidential resource" "meant to help employees cope with any problems that they're having inside and outside work." *Id.* at 160:14-161:17. She highlighted to him the Employee Assistance Program's capacity to "assist employees in resolving conflicts between them," *id.* at 163:20-24, but he did not "respond well," and would instead "roll his eyes and indicate that he didn't have a problem, it was everyone else who had a problem," *id.* at 163:24-164:8.

In all the complaints that Pratt & Whitney received, Mr. Walczak did not assert any harassment or issues based on his gender, ancestry, national origin, religion, or any protected

category. Def.'s SMF ¶ 16. Mr. Walczak admitted that the reason for his coworkers' alleged "harassment" was "unknown" to him. Walczak Dep. at 81:25-82:8. According to Mr. Walczak, he did not report every one of his complaints. Pl.'s SMF ¶ 16 ("I cannot report every spit or every racial slur."); *but see* Walczak Dep. at 131:9-12 ("Q. It is already clear on the record that you did not complain to the company about the comment KGB agent. Is that true? A. Yes"). In one e-mail, dated April 8, 2015, sent to a Terrence Orr, Michael Schmidt, and Robert Behrens, Mr. Walczak wrote that his complaints related to three other coworkers' whistling had to be "racially motivated harassment" related to his "point of origin [being] Poland." Ex. 13, ECF No. 56-4 at 27. Mr. Walczak acknowledged that Pratt & Whitney could not take action on any alleged discriminatory conduct he did not report. Walczak Dep. at 64:17-20 ("Q. You would agree with me that the company can't take any action on a complaint that you don't raise to the company. Is that true? A. True.").

On March 9, 2016, Ms. Ferreira and Gary Nester, Pratt & Whitney's then-Labor Relations Manager, met with Mr. Walczak to give him feedback. Def.'s SMF ¶ 19. They informed him that he needed to stop making "frivolous complaints," which were "becoming an absolute administarive burden," and recommended again that he contact EAP. Arb. Tr. III at 220:2-19. They also informed him that "he need[ed] to only make legitimate complaints to HR," and could not "keep making false claims." *Id.* at 159:2-14.

On March 10, 2016, Mr. Walczak wrote to Pratt & Whitney's Ombudsman. Ex. M: Letter to Ombudsman, ECF No. 44-13. According to Mr. Waczak, Mr. Nester "threaten[ed] [him] with the disciplinary action for reporting harassment without merits," but he was "satisfied with the professional help coming from [Ms. Ferreira]." *Id.* He stated that the "[o]verall situation is

almost contained," and that the "progress is positive." *Id.* The letter did not mention discrimination or harassment on the basis of any protected characteristic. *Id.*

Two months before Mr. Walczak's termination, he allegedly filed a grievance about a matter unrelated to this lawsuit, but he alleges that his termination, at least partly, was in retaliation for his unrelated grievance claiming that Pratt & Whitney did not pay him about $30,000 in retroactive pay. Pl.'s SMF – Add'l Facts ¶ 20. According to Mr. Walczak, this matter was awaiting arbitration, but he was terminated while it was pending. *Id.*

Mr. Walczak's Termination

Two members of the Human Resources Department—Robert McGuinness, Senior Industrial Relations Manager, and Robert Schuelke, Industrial Relations Specialist—conducted an investigation and interviewed two witnesses in relation to Ms. Holloman's report. Def.'s SMF ¶ 27. The two did not find Mr. Walczak's denials regarding his confrontations credible. *Id.* Mr. Nester reviewed these investigation notes, and also interviewed Tom Turner, who Mr. Walczak claimed could substantiate his account of the April 8, 2016 confrontation with Mr. Czarnota. *Id.* ¶ 28. Mr. Turner stated that he did not witness that altercation, but he did hear about the "heated verbal altercation" between Mr. Walczak and Ms. Holloman. *Id.*; *see* Ex. U, Interview Notes with Tom Turner, ECF No. 44-21 (Apr. 19, 2016) ("According to Mr. Turner, he did not witness the incident that ocurred on April 8th, but . . . [he] did, however, go on to describe a recent verbal altercation he had heard about between Mr. Walczak and a newly transferred inspector . . . Dianne Holloman.").

Mr. Nester, who is also a Polish male, concluded that Mr. Walczak had "engaged in threatening behavior toward [Ms.] Holloman, and that his level of hostility was unwarranted and malicious." *Id.* ¶ 29. Mr. Nester concluded that Mr. Walczak "should be terminated" because,

"[i]n addition to the burdensome and laborious complaints that he had continued to render . . . , his workplace incidents were becoming more concerning." Arb. Tr. III at 239:11-22. Mr. Nester noted that Mr. Walczak "was burdensome for supervision to constantly relocate, only for him to have additional problems with coworkers or non-employees," and that "[e]mployees had directly expressed . . . their level of concern for their personal safety." *Id.* at 239:23-240:3.

On April 19, 2016, Pratt & Whitney ended Mr. Walczak's employment for "violation of Company rules." Ex. W: Termination Letter, ECF No. 44-23 (Apr. 19, 2016). According to Mr. Walczak, he was "terminated because of [his] gender . . . national origin / ancestry as [he is] Polish and Jewish."

Pratt & Whitney claims to have terminated employees who engage in threatening conduct, including employees who: (1) "engaged in frightening conduct towards company medical staff causing them to cry and be fearful with their hands on the panic button to call security;" (2) "had repeated conflicts with coworker requiring [Threat Management Team] intervention;" and (3) "who told . . . supervisor to 'go f*** himself.'" Def.'s SMF ¶ 30.

According to Mr. Walczak, none of those employees were Polish. Pl.'s SMF ¶ 30; *but see* Def.'s SMF ¶ 30 (noting that the ancestry and national origin of these terminated employees were unknown).

<u>Subsequent Arbitration and CHRO Complaint</u>[1]

The International Association of Machinists and Aerospace Workers, Local Lodge 700 ("the Union"), filed a grievance in response to Mr. Walczak's termination. Def.'s SMF ¶ 31; Ex.

---

[1] Mr. Walczak alleges that he sent "a letter asking for help" to the CHRO in 2013. Pl.'s SMF – Add'l Facts ¶ 7. His supporting document, Exhibit 9, is a typed and undated letter addressed "To Whom It May Concern." Ex. 9, ECF No. 56-4. He also alleges that he sent another letter to the CHRO in September 2015 "pleading for help." Pl.'s SMF – Add'l Facts ¶ 9. His supporting document is another typed and undated letter. Ex. 10, ECF No. 56-4. Because he does not cite to an administrative record or any other document that can be authenticated, the Court does not rely on these allegations here.

Z: Arb. Opinion and Award, ECF No. 44-26 (Jan. 14, 2017). On January 14, 2017, after four days of testimony from twenty-one witnesses, including Mr. Walczak, Arbitrator Joan Parker issued an Opinion and Award upholding his termination. Def.'s SMF ¶ 31; *see* Arb. Opinion and Award at 23 ("Based upon the findings and analysis set forth above, the Arbitrator concludes that Grievant engaged in a persistent pattern of threatening and harassing behavior in violation of the Company's rules . . . . This combination of circumstances led the Company to realize that Grievant could no longer be trusted to safely work with others.").

Mr. Walczak alleges that the arbitration decision "was rendered without full evidentiary process" because he was not allowed in the room during the different witness testimonies. Pl.'s SMF – Add'l Facts ¶¶ 25-29; *see also id.* ¶ 25 ("My Constitutionals [sic] rights to examine the evidence were violated and are representing breach of Law."). He also alleges that the Union had a conflict of interest in defending him because he had filed complaints against two Union Stewards, *id*, one of which was Mr. Czarnota.

On May 9, 2016, Mr. Walczak also filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") alleging many of the same claims he is raising in this lawsuit; namely, that Pratt & Whitney discriminated against him based on his national origin of Poland, Polish ancestry, and Jewish religion, in violation of Title VII and the CFEPA. Ex. AA: CHRO Compl., ECF No. 44-27 (May 9, 2016).

On September 27, 2017, the CHRO issued its final finding and closed the case as "Dismissed for No Reasonable Cause." Ex. BB: CHRO Final Decision, ECF No. 44-28 (Sept. 27, 2017). After reviewing all of the evidence in the file, the CHRO investigator concluded that "there is no reasonable cause for believing that a discriminatory practice has been or is being committed as alleged in the complaint." *Id.* at 16 (internal formatting omitted).

The CHRO sent a draft finding to the parties on August 23, 2017, *id.* at 6, and on August 26, 2017, Mr. Walczak attempted to move for reconsideration of the CHRO's determination, Ex. CC: Reconsideration Fax, ECF No. 44-29 (Aug. 26, 2017); *but see* Ex. DD: CHRO Reconsideration Decision, ECF No. 44-30 at 3 (Dec. 18, 2017) (noting that Mr. Walczak officially "requested reconsideration on 10/10/17").

On December 18, 2017, the CHRO denied Mr. Walczak's request for reconsideration. CHRO Reconsideration Decision at 5. Although Mr. Walczak alleged then and now that the arbitration process was unfair, the CHRO wrote that even though the file did not document what occurred at the fact-finding, Mr. Walczak "sat in the same room where the testimony was being given and at the time it was being given." *Id.* at 4 (also noting that "[a]ny flaws or unfairness in the arbitration process should have made their way into a separate complaint against the arbitrator if the Complainant thought he was discriminated against during the arbitration"). Mr. Walczak alleges he e-mailed the author of the request for reconsideration, Principal Attorney Charles Krich, "about his error" but Mr. Krich did not respond. Pl.'s SMF – Add'l Facts ¶ 33.

The CHRO wrote in its reconsideration decision:

> Mr. Walczak's presentation largely rests on the notion that the CHRO should have accepted his testimony and made a finding in his favor, ignoring or discounting what other employees had to say. Almost all the claims he makes in his request for reconsideration involve just that. I can't disregard the credibility determination made by the investigator, who heard all the witnesses and accepted the Respondent's testimony, and believe [Mr. Walczak] instead. That is not how the process works. The investigator has the ability to hear the witnesses directly, not me. And from that ability comes the power to determine what evidence to believe. My role is not to conduct a second investigation . . . . The request for reconsideration is rejected.

*Id.* at 5.

### B. Procedural History

On April 4, 2018, Mr. Walczak filed a lawsuit against Pratt & Whitney. Compl., ECF No. 1 (Apr. 4, 2018).

On June 5, 2018, Pratt & Whitney filed an Answer, ECF No. 13 (June 5, 2018), and moved to strike part of the Complaint, Mot. to Strike, ECF No. 14 (June 5, 2018).

On January 9, 2019, the Court granted Pratt & Whitney's motion to strike part of the Complaint. Order, ECF No. 31 (Jan. 9, 2019).

On January 25, 2019, Mr. Walczak filed an Amended Complaint. Am. Compl., ECF No. 32 (Jan. 25, 2019).

On February 5, 2019, Pratt & Whitney filed an Amended Answer. Am. Answer, ECF No. 33 (Feb. 5, 2019).

On May 6, 2019, Pratt & Whitney moved for summary judgment and filed a supporting memorandum, statement of material facts, and thirty exhibits. Mot. Summ. J., ECF No. 42 (May 6, 2019); Mem. of Law in Supp. of Mot. Summ. J., ECF No. 43 (May 6, 2019) ("Def.'s Mem.")' L. R. 56(a)1 Statement of Undisputed Material Facts, ECF No. 44 (May 6, 2019) ("Def.'s SMF"); Docket Entries, ECF No. 44-1 to 44-30 (May 6, 2019) (containing the supporting exhibits).

On May 10, 2019, Pratt & Whitney filed an additional supporting exhibit. Suppl. Decl., ECF No. 46 (May 10, 2019).

On June 6, 2019, Mr. Walczak opposed Pratt & Whitney's motion for summary judgment, and filed a supporting memorandum, statement of material facts, and exhibits. Pl.'s Mot. Opp'n Mot. Summ. J., ECF No. 56 (June 6, 2019) ("Pl.'s Opp'n"); Statement in Opp'n to Def.'s SMF, ECF No. 56-3 (June 6, 2019) ("Pl.'s SMF"); Pl.'s Statement of Undisputed Material

Facts, ECF No. 56-2 (June 6, 2019) ("Pl.'s SMF – Add'l Facts"); Docket entry, ECF No. 56-4 (June 6, 2019) (containing supporting exhibits). On the same day, Mr. Walczak also moved to amend the Complaint to reflect Pratt & Whitney's correct name. Mot. to Amend/Correct, ECF No. 57 (June 6, 2019).

On August 23, 2019, Pratt & Whitney replied to Mr. Walczak's opposition. Def.'s Reply Br. in Further Supp. Mot. Summ. J., ECF No. 62 (Aug. 23, 2019) ("Def.'s Reply").

On September 6, 2019, Mr. Walczak filed a sur-reply. Pl.'s Resp. to Def.'s Reply, ECF No. 68 (Sept. 6, 2019) ("Pl.'s Sur-reply").

On September 25, 2019, the Court granted Mr. Walczak's motion to amend the Complaint to correct Pratt & Whitney's name. Order, ECF No. 69 (Sept. 25, 2019).

On September 27, Mr. Walczak filed this Amended Complaint. Am. Compl., ECF No. 70 (Sept. 27, 2019).

On February 13, 2020, the Court held a hearing on the motion for summary judgment. Minute Entry, ECF No. 74 (Feb. 13, 2020).

## II.    STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine*

issue of *material* fact." *Id.* at 247–48 (emphasis in the original).

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

A court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *See Dufort v. City of N.Y.*, 874 F.3d 338, 343 (2d Cir. 2017) ("On a motion for summary judgment, the court must 'resolve all ambiguities and

draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'"). A court will not draw an inference of a genuine dispute of material fact from conclusory allegations or denials, *see Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011), and will grant summary judgment only "if, under the governing law, there can be but one reasonable conclusion as to the verdict," *Anderson*, 477 U.S. at 250.

With *pro se* litigants, a court must liberally construe their filings to raise the "strongest arguments it suggests." *See Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006); *see also Sykes v. Bank of Am.,* 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman,* 470 F.3d at 474). A court is not obligated, however, to "perform an independent review of the record to find proof of a factual dispute. A district court is obligated only to consider the materials cited to it by the parties." *Morales v. N.Y. State Dep't of Labor*, 530 Fed. App'x. 13, 14 (2d Cir. 2013) (internal quotation marks and citation omitted).

## III.  DISCUSSION

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Mr. Walczak claims that Pratt & Whitney terminated and discriminated against him on the basis of his sex and national origin (or ancestry), in violation of various provisions of Title VII and the CFEPA. Pratt & Whitney has moved for summary judgment on all of Mr. Walczak's claims. Because courts analyze claims under the CFEPA using the same standards as Title VII, the Court will focus its analysis on the federal claims.[2] *See Jackson v. Water Pollution Control*

---

[2] Pratt & Whitney's motion for summary judgment briefly explains why a hostile work environment claim would also fail, Def.'s Mem. at 22-23, but because Mr. Walczak does not allege such a claim in his Amended Complaint,

*Auth. of City of Bridgeport*, 278 Conn. 692, 705 n.11 (2006) ("We look to federal law for guidance in interpreting state employment discrimination law, and analyze claims under [the CFEPA] in the same manner as federal courts evaluate federal discrimination claims." (internal citation omitted)).

Under Title VII, claims of employment discrimination and retaliation are governed by the burden shifting analysis the Supreme Court established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (citation omitted) (analyzing Title VII sex discrimination claims); *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1177–78 (2d Cir. 1996) (in the context of a Title VII retaliation claim). Under this burden-shifting framework, the plaintiff employee must first present a *prima facie* case by establishing:

> (1) that he belonged to a protected class; (2) that he was qualified for the position he sought; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.

*Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251-52 (2d. Cir. 2014) (citing *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008)).

After the plaintiff meets this "initial burden," then it becomes the employer's burden to establish a legitimate nondiscriminatory reason for its actions; "the final and ultimate burden is on the plaintiff to establish that the defendant's reason is in fact pretext for unlawful discrimination." *Id.* at 251 (citing *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 446 (2d Cir. 1999)); *see also Sista v. CDC Ixix N.A., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (emphasizing "admissible

---

and has never sought leave to amend and add such a claim, *see* Mot. to Amend/Correct, ECF No. 57 (June 6, 2019) (seeking leave to update Pratt & Whitney's full name, and filed at the same time as his opposition to summary judgment), the Court will not address that claim here.

evidence" in a disability discrimination case (citation omitted)); *Terry v. Ashcroft*, 336 F.3d 128, 137–38, 140–41 (2d Cir. 2003) (in the Title VII race and gender discrimination and retaliation contexts (citation omitted)).[3]

## A. The Title VII Gender Discrimination Claim

Pratt & Whitney argues that Mr. Walczak's *prima facie* case of gender discrimination fails because there is no evidence of a gender-based animus. Def.'s Mem. at 16. Pratt & Whitney contends that Mr. Walczak "cannot prove that his termination occurred under circumstances giving rise to an inference of gender discrimination," because the "undisputed record . . . establishes that [Mr.] Walczak's threatening behavior toward a male coworker, [Mr.] Czarnota, also factored into Pratt's investigation and termination decision." *Id.* Pratt & Whitney further contends that Mr. Walczak's "gender discrimination claim rests on speculation, which is

---

[3] The requirements for an opposition to summary judgment are set forth in the District of Connecticut's Local Rule of Civil Procedure 56, which requires that a non-moving party's Statement of Material Facts in Opposition to Summary Judgment "shall include . . . a response to each paragraph admitting or denying the fact and/or objecting to the fact as permitted by Federal Rule of Civil Procedure 56(c)." D. Conn. L. Civ. R. 56(a)2(i). Furthermore, "[e]ach denial . . . must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial." *Id.* 56(a)3. "When a party fails to appropriately deny material facts set forth in the movant's Rule 56(a)(1) statement, those facts are deemed admitted." *SEC v. Global Telecom Servs. L.L.C.*, 325 F. Supp. 2d 94, 109 (D. Conn. 2004).

"Under Fed. R. Civ. P. 56(e), only admissible evidence may be used to resist a motion for summary judgment . . . ." *Rohman v. New York City Transit Auth. (NYCTA)*, 215 F.3d 208, 218 n.6 (2d Cir. 2000); *see, e.g.*, *McCloskey v. Union Carbide Corp.*, 815 F. Supp. 78, 81 (D. Conn. 1993) ("A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." (internal quotation marks omitted) (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986)); *Ventura v. Town of Manchester*, No. CIV. 3:06-cv-630 (EBB), 2008 WL 4080099, at *6 (D. Conn. Sept. 2, 2008) ("Legal conclusions offered by both lay and expert witnesses are inadmissible because it is not for a witness to instruct the court on the law." (citation omitted)); *A.D. v. Bd. of Educ. of City Sch. Dist. of City of New York*, 690 F. Supp. 2d 193, 216 (S.D.N.Y. 2010) ("[M]aterials submitted by a party in connection with a summary judgment motion must be 'made on personal knowledge.' This requirement is not satisfied by assertions made 'on information and belief' . . . ." (citation and internal quotation marks omitted)).

As explained below, to the extent that Mr. Walczak's Rule 56(a)2 Statement of Material Facts fails to comply with Local Rule 56(a)2 and (a)3 and fails to point to evidence in the record, this Court deems the corresponding facts in the Defendant's Local Rule 56(a)1 Statement to be admitted for purposes of this motion, where those asserted facts are supported by admissible evidence: paragraphs 13-15, 21, 26-29, 31. Additionally, paragraphs 1-12 are admitted, because Mr. Walczak has "agree[d]" to them. The Court will not rely on assertions that are unsupported by admissible evidence in the record. The Court also notes that it is under no obligation to "review portions of the record in response to a motion, where the moving and opposition papers do not make specific reference to such portions of the record." D. Conn. L. Civ. R. 7(a)(3).

insufficient to sustain a claim." *Id.* at 17. According to Pratt & Whitney, "even when all reasonable inferences are drawn in favor of [Mr.] Walczak, his allegations provide no basis upon which to conclude that Pratt was motivated by sex when it terminated his employment." *Id.*

The Court construes the basis of Mr. Walczak's gender discrimination claim to be that a "[s]ingle and fabricated [report] from one female was enough to suspend and then terminate [his] employment." Pl.'s Opp'n at 15. In addition, Mr. Walczak contends he never said to Mr. Czarnota, "Bang, bang, I'm gonna shoot you," or "Bang, bang, what you gonna do when I shoot you," and that Ms. Holloman "added this false statement during Arbitration maliciously with the clear intention to" get Mr. Walczak fired. *Id.* at 10. Mr. Walczak also argues that he did not know about this statement until discovery in this case, and that this was unfair to him during the arbitration process. *Id.* at 10-13. He emphasizes that "nobody ever reported these alleged words" to Pratt & Whitney, and that Mr. Czarnota never showed up to the arbitration, despite being served with a subpoena. *Id.* at 2, 12.

In reply, Pratt & Whitney emphasizes that there is "no evidence that Ms. Holloman harbored a discriminatory or retaliatory animus," nor does Mr. Walczak claim as much. Def.'s Reply at 4. In addition, Pratt & Whitney notes that Mr. Turner, who was interviewed because Mr. Walczak claimed he could corroborate Mr. Walczak's innocence regarding the incident with Mr. Czarnota on April 8—actually could not do so. *Id.* at 5. According to Pratt & Whitney, Mr. Walczak's "disagreement . . . does not constitute evidence, nor does it create a disputed issue of material fact." *Id.* at 6.

In sur-reply, Mr. Walczak writes that "false and fabricated statements," specifically a "single fabricated complaint coming from the female Diane Holloman," were "enough to terminate [his] employment." Pl.'s Sur-reply at 1, 4.

The Court disagrees.

Mr. Walczak has failed to establish a *prima facie* case because he failed to provide evidence that Pratt & Whitney fired him because of his gender, i.e., because he is a man. He has only presented bald assertions, bolstered mainly by his own affidavits or other inadmissible evidence. *See generally* Pl.'s Opp'n; *see also id.* at 1-2 ("I considered [my termination] to be pure retaliation and gender discrimination."). Although "discrimination will seldom manifest itself overtly," a court must "carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture." *Bickerstaff*, 196 F.3d at 448.

Here, Mr. Walczak's sole basis for his gender discrimination claim is this: because a woman, Ms. Holloman, complained about him, he was fired. He admits that he did not know her before she moved to their work area, Pl.'s Sur-reply at 3 ("[D]iane Holloman she was unknow [sic] to me"), which follows that there was likely no history of animus with her specifically, and certainly not on the basis of his gender. *See* Walczak Dep. at 102:8-10 ("No female ever harassed me for anything. I have always good friendship.").

Mr. Walczak, however, has not supported his allegations with admissible evidence. In fact, Mr. Turner, who Mr. Walczak claimed could corroborate his statement about his altercation with Mr. Czarnota a couple of days prior, could not, and instead "describe[d] a recent verbal altercation he had heard about between Mr. Walczak and . . . [Ms.] Holloman." Interview Notes with Tom Turner. As a result, there is no genuine dispute of material fact as to whether Mr. Walczak was fired because he was a man. *See Abrams*, 764 F.3d at 251-52 ("A plaintiff presents a prima facie case when he establishes: . . . (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent.").

Additionally, even if Mr. Walczak could establish a *prima facie* case of gender discrimination, he has not demonstrated that Pratt & Whitney's legitimate reasons for firing him are pretextual. Under the *McConnell Douglas Corp.* burden-shifting framework, even after the plaintiff establishes a *prima facie* case of discrimination, the plaintiff still carries the burden of showing that the defendants' nondiscriminatory reasons were pretextual. *See* 411 U.S. at 804. Mr. Walczak has not met that burden here. Pratt & Whitney has provided a detailed account of Mr. Walczak's alleged behavior, and although he disputes the fairness of the arbitration process—namely, that he allegedly could not listen to the witness testimonies and that the Union did not adequately represent him—he cites to no admissible evidence creating a genuine issue of material fact as to his behavior, the Threat Management Team's investigation thereof, or any animus on the part of any decisionmaker. Even *pro se* "litigants should be on notice . . . that a party faced with a summary judgment motion 'may not rest upon the mere allegations or denials' of the party's pleading." *Champion v. Artuz*, 76 F.3d 483, 485 (2d Cir. 1996) (quoting *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988) (quoting Fed. R. Civ. P. 56(e))).

There is no genuine issue of material fact as to whether Pratt & Whitney's reasons for terminating Mr. Walczak were legitimate and nondiscriminatory. *See also* Arb. Opinion and Award at 19-23 (describing how Pratt & Whitney had just cause to suspend and discharge Mr. Walczak, and emphasizing Mr. Walczak's "persistent pattern of threatening and harassing behavior in violation of the Company's rules"). There is corroborated record evidence of Mr. Walczak's behavior towards both Mr. Czarnota and Ms. Holloman. *See, e.g.*, Clifford Statement (describing Mr. Walczak's verbal and almost physical altercation with Mr. Czarnota); Holloman Statement (noting that "she felt that [Mr. Walczak] posed a threat to her coworkers"). Although Pratt & Whitney could have mandated Employee Assistance Program counseling as a condition

of Mr. Walczak's return, that decision was discretionary; additionally, based on Mr. Walczak's repeated rejections of the Employee Assistance Program in the past, there was no evidence in this record to support the notion that Pratt & Whitney believed it would have remedied the problem. *See* Arb. Tr. III at 163:24-164:8 (noting that Mr. Walczak did not "respond well" to HR's recommendations to attend EAP counseling, and would instead "roll his eyes and indicate that he didn't have a problem, it was everyone else who had a problem").

As a result, because Mr. Walczak acknowledges Pratt & Whitney's policies to ensure employees have a "safe, healthy, and violence-free work environment," he was on notice that "employees [who] engaged in actual or threatened workplace violence will be subject to appropriate disciplinary action, up to and including termination of employment." Def.'s SMF ¶ 6 (undisputed). There is no evidence in the record from which a reasonable jury could find that Pratt & Whitney's reasons for firing Mr. Walczak was a pretext for gender discrimination.

In the absence of admissible evidence, Mr. Walczak has failed to establish a genuine issue of material fact as to whether Pratt discriminated against him based on his gender in violation of Title VII.

Accordingly, Mr. Walczak's claim of gender discrimination under Title VII will be dismissed.

### B.  The Title VII Ancestry or National Origin Discrimination Claim

Pratt & Whitney similarly argues, as it did for Mr. Walczak's gender discrimination claim, that there is no evidence of discriminatory animus for ancestry or national origin discrimination. Def.'s Mem. at 18. Pratt & Whitney submits that he "does not claim that any individual who participated in the termination decision was aware of" the alleged remarks "about him being a 'smelly Polish' person, a member of the KGB, and of Jewish ancestry." *Id.* Pratt &

Whitney notes that while Mr. Walczak "may feel that his coworkers were abusive towards him based on his ancestry or national origin, his 'feelings and perceptions of being discriminated against are not evidence of discrimination." *Id.* at 19 (quoting *Bickerstaff*, 196 F.3d at 456). Pratt & Whitney emphasizes that Mr. Walczak "does not claim that Ms. Holloman or Mr. Czarnota— the targets of his threatening behavior—made any remarks or jokes about his ancestry or national origin." *Id.* at 20.

According to Pratt & Whitney, even assuming a *prima facie* case of ancestry or national origin discrimination, Mr. Walczak "cannot overcome Pratt's legitimate, nondiscriminatory business reason for firing him," because other "employees made corroborated complaints about his threatening behavior." *Id.* at 19.

Mr. Walczak argues that the "wave" of "harassment, racial slur[s], [and] derogatory comments originated from" the incident on September 11, 2011, and that he has been called the slur "Polack," "[P]olish shit," "smelly Polish," and told, "go back on your boat, KGB agent." Pl.'s Opp'n at 14. Mr. Walczak claims that he reported them "sometimes verbally or in written" form, but that "[m]ost of [his] complaints were reported" as "harassment or bullying." *Id.* at 14-15. According to Mr. Walczak, he "verbally" notified Mr. Orr, his supervisor, about an instance where Mr. Boulay and Mr. Barbosa made a comment "directly in [his] presence about 'smelly Polish people,'" and that Mr. Orr did nothing. *Id.* at 7. Mr. Walczak also claims that his "tormentors" referred to him as a "[C]ommunist" who was "disrespectful to [the] 9/11 tragedy." *Id.* at 15. Finally, Mr. Walczak argues that three other "non-Polish employees who made actual threats were not disciplined for conduct that was more egregious than the conduct for which [he] was disciplined," and instead "were referred to [EAP]." *Id.* at 15.

In reply, Pratt & Whitney argues the same as noted above for Mr. Walczak's claim,

namely that Pratt & Whitney terminated Mr. Walczak's employment because of his hostile and threatening behavior towards peers, and this decision was based on "strong and reasonable evidence from multiple unbiased witnesses." Def.'s Reply at 4-10. Pratt & Whitney also notes that Mr. Nester, who made the decision to terminate Mr. Walczak, is also a Polish man. *Id.* at 6. Finally, Pratt & Whitney emphasizes that Mr. Walczak does not identify the three non-Polish employees who were allegedly treated differently than him, and that he "cannot demonstrate that these comparators are similarly situated in all material aspects or that they 'engaged in comparable conduct.'" *Id.* at 9 (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)). According to Pratt & Whitney, these individuals "are not proper comparators to someone like Plaintiff, who engaged in multiple threatening and hostile acts." *Id.* at 10 (also noting that Mr. Walczak refused Ms. Ferreira's prior referrals to EAP).

In sur-reply, Mr. Walczak writes that ever since the incident with Ms. Bosse on 9/11, she and Mr. Barboso:

> triggered unprecedented wave of hate towards me, followed by the aggressive harassment, bullying, spitting in front of me , using loud blow horns to scary [sic] me, popping paper bags behind my head, racial slur, jokes about "smelly polish [sic] people,["] calling me "KGB", whistling like calling dog , or whistling like calling taxi cab, both ways done loudly right next to me, dozens of the times per day and every day, relentlessly continued . . . [o]rganized mobbing was growing in the scale of the hostilities, day by day.

Pl.'s Sur-reply at 2. He contends that Pratt & Whitney's responses to his many complaints were "weak and inadequate." *Id.* at 3.

The Court disagrees.

First, Mr. Walczak has not established a *prima facie* case of discrimination on the basis of national origin or ancestry. Although he claims to have reported "sometimes verbally or in written" form discriminatory statements, he also admits that "[m]ost of [his] complaints were

reported" as general "harassment or bullying," Pl.'s Opp'n at 14-15, most of which was whistling. *See* Arb. Tr. III at 151:12-14 (concluding that "there was really no evidence found that there was any whistling occurring or any whistling at him in any harassing nature"). Additionally, despite maintaining that others allegedly made discriminatory or derogatory comments towards him, Mr. Walczak admitted that he did not report them, and that Pratt & Whitney could not act on any alleged discriminatory conduct that he did not report. *See* Walczak Dep. at 131:9-12 ("Q. It is already clear on the record that you did not complain to the company about the comment KGB agent. Is that true? A. Yes"); *id.* at 64:17-20 ("Q. You would agree with me that the company can't take any action on a complaint that you don't raise to the company. Is that true? A. True.").

Mr. Walczak has not produced admissible evidence that he reported any comments relating to his national origin of Poland or Polish ancestry, not even Mr. Orr, to whom he allegedly "verbally" relayed an instance where two coworkers, Mr. Boulay and Mr. Barbosa, made a comment "directly in [his] presence about 'smelly Polish people.'" Pl.'s Opp'n at 7 (also alleging that Mr. Orr did nothing about this report); *see also* Walczak Dep. at 81:25-82:8 (admitting that the reason for his coworkers' alleged "harassment" was "unknown" to him). Furthermore, despite his many allegations of discriminatory comments made by others, *see* Pl.'s Sur-reply at 2, he has not produced a single witness to testify that any decisionmaker discriminated against or harbored animus toward him because he was from Poland or Polish. *See Howe v. Town of Hempstead*, 2006 WL 3095819, at *7 (2d Cir. 2006) ("This connection [between discriminatory comments and an intent to discriminate] exists if the comments were made by the decision-maker or by someone who had great influence over the decision-maker."); *Rose v. N.Y.C. Bd. of Educ.*, 257 F.3d 156, 162 (2d Cir. 2001) (finding that age-related comments

were direct evidence of discriminatory animus because they were made by a supervisor with "enormous influence in the decision-making process"); *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 162-63 (2d Cir. 1998) (stating that discriminatory comments were made by supervisors, not regular employees with no say in the termination decision, so the comments do evince discriminatory animus); *see also Griffin v. Ambika Corp.*, 103 F. Supp. 2d 297, 309 (S.D.N.Y. 2000) (finding that it was "fatal" to plaintiff's case that they only alleged discriminatory statements by coworkers, not anyone involved in the decisions to terminate their employment). As a result, there is no genuine dispute of material fact as to whether Mr. Walczak was fired because of his national origin or ancestry.

Second, as this Court has already noted, even if Mr. Walczak's unsubstantiated testimony was sufficient to establish a *prima facie* discrimination case on any basis, *see McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001) ("the burden of establishing this prima facie case in employment discrimination cases is minimal"), a *prima facie* discrimination case cannot survive a motion for summary judgment where the defendant articulates a nondiscriminatory reason for the allegedly discriminatory conduct. *See James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000) ("[O]nce the employer articulates a nondiscriminatory reason for its actions, the presumption completely drops out of the picture. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated remains at all times with the plaintiff." (internal quotes and citations omitted)). Here, Pratt & Whitney has proffered a legitimate and nondiscriminatory reason for terminating Mr. Walczak's behavior: Mr. Walczak's (arguably unprovoked) threatening and hostile behavior towards his coworkers.

Third, Mr. Walczak has failed to once again cite to admissible evidence creating a genuine issue of material fact that Pratt & Whitney's legitimate and nondiscriminatory reasons

for firing him were pretextual. Mr. Walczak does claim that—besides his suspension and termination—he was never disciplined while employed at Pratt & Whitney, and there were no issues with his job performance. Pl.'s Opp'n at 4. His ability to perform his job, however, does not create a genuine issue of material fact as to pretext, because Pratt & Whitney has provided ample evidence that Mr. Walczak could not work well with others and was increasingly hostile to coworkers.

The record is replete with Mr. Walczak's difficulties interacting with contractors, *see* TMT Record – McComarck (describing that Mr. Walczak confronted a contractor and "grabb[ed] onto [his] ID badge" and said, "We will get to know each other" after the contractor allegedly whistled at him), and coworkers, *see, e.g.*, Arb. Tr. II at 114:20-25, 117:1-25 (describing Mr. Walczak's yelling at a coworker and inappropriate comment about his wife); his inability to acknowledge his role in interpersonal conflicts, *see* Arb. Tr. III at 163:24-164:8 (noting that Mr. Walczak did not "respond well" to HR's recommendations to attend EAP counseling, and would instead "roll his eyes and indicate that he didn't have a problem, it was everyone else who had a problem"); and his threatening behavior towards others, *see* Clifford Statement (describing Mr. Walczak's altercation with Mr. Czarnota); Holloman Statement (describing Mr. Walczak's altercation with Ms. Holloman).

Mr. Walczak's conclusory allegations that other witnesses's testimony is fabricated are otherwise unsupported by admissible evidence in the record. *See, e.g., Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) ("Even in the discrimination context, however, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment"); *Ruszkowski v. Kaleida Health Sys.*, 422 F. App'x 58, 61 (2d Cir. 2011) ("Appellant's conclusory statements regarding general societal attitudes toward, and harassment of, people of Polish

and/or German descent and his above-average DNA and test results are insufficient to establish a prima facie case"); *Zito v. Fried, Frank, Harris, Shriver & Jacobson, LLP*, 869 F. Supp. 2d 378, 397 (S.D.N.Y. 2012) (granting summary judgment and finding that plaintiff's unsubstantiated deposition testimony, statistical analysis, and affidavits lacking in evidentiary support were insufficient to establish a *prima facie* case under Title VII).

As a result, there is no genuine issue of material fact that Pratt & Whitney's reasons for firing Mr. Walczak were a mere pretext for national origin or ancestry discrimination.

Accordingly, Mr. Walczak's claim of national origin or ancestry discrimination under Title VII will be dismissed.

### C.  Title VII Retaliation Claim

Title VII makes it unlawful for an employer to discriminate against an employee because the employee has "opposed any practice made an unlawful employment practice . . . or . . . made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "The objective of this section is obviously to forbid an employer from retaliating against an employee because of the latter's opposition to an unlawful employment practice." *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988).

"In adjudicating retaliation claims, courts follow the familiar burden-shifting approach of *McDonnell Douglas Corp.*" *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010). The plaintiff employee must first establish a *prima facie* case by showing: (1) the employee engaged in an activity protected by Title VII; (2) the employer was aware of this activity; (3) the employer took adverse action against the employee; and (4) a causal connection exists between the alleged adverse action and the protected activity. *See Treglia v. Town of Manlius*, 313 F.3d

713, 719 (2d Cir. 2002) (citing *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001)). "A causal connection in retaliation claims can be shown either (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019) (internal quotations omitted) (citing *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015); *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)). If a plaintiff satisfies this initial burden, "a presumption of retaliation arises." *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (citation omitted).

Next, "the employer must offer through the introduction of admissible evidence a legitimate nondiscriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *See McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 96 (2d Cir. 2009) (citing *Sista*, 445 F.3d at 169). "The proper question for a retaliation claim is whether the alleged adverse action to which the plaintiff was subjected could well have dissuaded a reasonable employee in his position from complaining of unlawful discrimination." *Davis-Garrett v. Urban Outfitters, Inc.*, 921 F.3d 30, 44 (2d Cir. 2019) (citing *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). Finally, "Title VII retaliation claims must be proved according to traditional principles of but-for causation." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2534 (2013).

Pratt & Whitney argues that "[v]ague and generalized complaints of mistreatment do not trigger Title VII's or CFEPA's anti-retaliation protections." Def.'s Mem. at 24 (citations omitted). According to Pratt & Whitney, Mr. Walczak "did not engage in any activity protected

by CFEPA or Title VII." *Id.* at 25. Pratt & Whitney contends that, even assuming he had engaged in protected activity, he could not establish the causal link between this protected activity and his termination for violating Pratt & Whitney's policies. *Id.* Finally, Pratt & Whitney submits that there is no evidence of pretext as to why he was fired, because between April 8 and April 11, 2016, "Pratt received reports that Walczak had threatened his coworkers with increased frequency and severity." *Id.* at 26-27. Pratt & Whitney argues that the temporal proximity of Mr. Walczak's meeting with Mr. Nester and Ms. Ferreira on March 6, 2019—for which he wrote a letter to the Ombudsman about Mr. Nester's alleged mistreatment of him—and his termination on April 19, 2016 is, without more, insufficient to establish pretext. *Id.* at 27.

Mr. Walczak argues that Pratt & Whitney retaliated against him in two main ways: first, his reassignment in July of 2013 to a different building, which he argues occurred "because Pratt "sent [him] to the building with concrete floors knowing, [sic] that concrete is worsening [his] health condition," Pl.'s Opp'n at 2-3; and second, his termination, for various reasons, *id.* at 3. Mr. Walczak argues that Mr. Nester fired him "in retaliation" and "based on the false allegations coming from the female, African American senior employee Diane Holloman." *Id.* at 14. According to Mr. Walczak, Pratt & Whitney/Mr. Nester fired him in retaliation for "two complaints [that] were very close to the date of his termination": (1) his pending grievance about missing retroactive pay, allegedly filed "two months before" his termination; and (2) the letter he sent the to the Ombudsman regarding Mr. Nester's "threat[]" of "disciplinary actions" if Mr. Pratt filed "additional complaints." *Id.* To Mr. Walczak, the "[t]iming between [his] complaints and the date of his termination is obvious and retaliatory." *Id.*

In reply, Pratt & Whitney notes that the "foundation of Plaintiff's retaliation claim is unclear, and appears to be a moving target." Def.'s Reply at 7. Pratt & Whitney construes the

basis of Mr. Walczak's retaliation claim to be his termination based on "(1) complaining to Mr. Nester about interpersonal conflicts with coworkers in March 2016, and (2) filing a Union grievance concerning an unpaid shift differential in February 2016." *Id.* Pratt & Whitney thus argues first that Mr. Walczak said nothing during the meeting on March 6, 2016 about or relating to his gender, ancestry, national origin, or any other protected characteristic, and so, absent protected activity, "there can be no retaliation under CFEPA or Title VII." *Id.* Even if that meeting involved protected activity, Pratt & Whitney contends that Mr. Walczak fails to establish the causal relationship between it and his termination "just days after [his] latest instance of threatening behavior." *Id.* at 8. Pratt & Whitney also emphasizes that Mr. Walczak's alleged wage-related Union grievance also did not constitute protected activity, and that Mr. Walczak has similarly failed to identify a causal link with his termination. *Id.* at 7-8.

In sur-reply, Mr. Walczak argues that Pratt & Whitney terminated his employment "on top of discriminatory and retaliatory practices." Pl.'s Sur-reply at 1.

The Court disagrees.

Mr. Walczak's retaliation claims fail for the same reasons as his discrimination claims. First, as the Court has already noted, Pratt & Whitney has articulated legitimate and nondiscriminatory reasons for terminating Mr. Walczak's employment. As a result, Mr. Walczak has failed to establish a direct causal connection between his termination and retaliatory animus.

Second, Mr. Walczak's reassignment to a different building is not an adverse employment action. *See Platt v. Inc. Vill. of Southampton*, 391 Fed. App'x 62, 64 (2d Cir. 2010) ("Actions are materially adverse if they are harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination [or retaliation]." (quoting *Hicks*, 593 F.3d at 162)). Minor inconveniences are not adverse employment actions.

*See Hicks*, 593 F.3d at 165 ("'Petty slights or minor annoyances that often take place at work and that all employees experience' do not constitute actionable retaliation." (quoting *Burlington*, 548 U.S. at 68). Mr. Walczak claims that Pratt & Whitney knowingly reassigned him to the only building with concrete floors, which allegedly negatively impacts his health, but he has not cited admissible evidence regarding either the existence of this medical condition or that Pratt & Whitney knew about it. The only evidence Mr. Walczak provides is a letter he purportedly sent to Pratt & Whitney's Medical Department, which states that he has arthritis "exacerbated by the prolonged standing on the cold concrete flooring in Bldg. 150," where he was reassigned. *See* Ex. 19, ECF No. 56-4 (consisting of a typed letter, dated June 7, 2010, addressed from Mr. Walczak to "Medical Department at Pratt&Whitney"). Pratt & Whitney only reassigned Mr. Walczak, however, because he requested a shift change to avoid the presence of an unnamed "oppressor." *Compare* Ex. 17, ECF No. 56-4 (Mr. Walczak's letter dated July 1, 2013), *with* Ex. 18, ECF No. 56-4 (Mr. Dempsey's letter notifying Mr. Walczak about the reassignment to building 150 in order to "provide a work environment free of harassment").

Mr. Walczak has not alleged or shown that he contacted Pratt & Whitney afterwards about his medical issues with this reassignment. At this stage, Mr. Walczak cannot rely on self-serving statements. *See Fuller v. Lantz*, 549 Fed. App'x 18, 20 (2d Cir. 2013) (finding that "lay statements are insufficient to create a genuine dispute of fact as to the propriety of a medical diagnosis"); *see also Charter Practices Int'l, LLC v. Robb*, No. 3:12-cv-1768 (RNC), 2017 WL 4366717, at *5 (D. Conn. Sept. 30, 2017). He must offer admissible evidence that Pratt & Whitney reassigned him because of his medical issues, or some other protected characteristic, and not rely on inadmissible speculation. *See, e.g.*, *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) ("If the defendant has stated a neutral reason for the adverse action, 'to

defeat summary judgment . . . the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination.'" (citing *Stern v. Trustees of Columbia Univ. in City of New York*, 131 F.3d 305, 312 (2d Cir. 1997))).

Third, Mr. Walczak has not established an indirect causal connection between either his allegedly pending grievance, filed February 2016, or his letter to the Ombudsman, sent March 2016, and his termination in April 2016. He claims an indirect causal connection due to the temporal proximity, but "[t]emporal proximity alone is insufficient to defeat summary judgment at the pretext stage." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 847 (2d Cir. 2013). A plaintiff would need other evidence, in addition to temporal proximity, "such as inconsistent employer explanations, to defeat summary judgment." *Id.* (collecting cases).

"Evidence of pretext may include temporal proximity between the protected activity and the adverse action plus additional evidence either showing retaliatory animus or disproving the truth of the employer's legitimate reason for the adverse action." *Siusdak v. Sessions*, 295 F. Supp. 3d 77, 105 (D. Conn. Feb. 21, 2018).  When temporal proximity is the only basis for a *prima facie* case, the time gap is typically brief. *See Zann Kwan*, 737 F.3d at 845 (the three-week period between plaintiff's complaint to her termination was "sufficiently short"); *Gorzynski v. JetBleu Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (holding that one month is sufficient to show causation); *Johnson v. Conn. Dep't of Corr.*, 392 F. Supp. 2d 326, 341 (D. Conn. 2005) ("[C]ourts in the Second Circuit have rejected finding a causal inference when there were gaps of three months, six months, eight months, one year, and eleven months between the filing of the complaint and the alleged retaliation." (citing *White v. Whitman*, 99-civ-4777, 2002 WL 776589, at *12 (S.D.N.Y. Apr. 26, 2002) (collecting cases)).

Even viewed in the light most favorable to him, Mr. Walczak has not provided the additional evidence of the allegedly pretextual nature of Pratt & Whitney's nondiscriminatory reasons for his termination. *See Zann Kwan*, 737 F.3d at 854 ("Whatever modest probative value temporal proximity might have in this case is washed away by the facts that Plaintiff did not offer any evidence to suggest that the decision-makers who fired her knew about the complaints she allegedly made [about gender discrimination] and that Plaintiff did not produce any evidence to undermine [Defendant's] position that her performance was demonstrably poor and incompatible with its shift in business focus."). In addition, there is no indication that either Mr. Walczak's pending grievance or his letter to the Ombudsman contained protected activity. *See, e.g.*, *Hollander v. Am. Cynamid Co.*, 895 F.2d 80, 86 (2d Cir. 1990) (affirming district court's finding that there was no causal nexus despite time gap of only three months); *see also Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("[C]ases that accept mere temporal proximity . . . as sufficient evidence of causality . . . uniformly hold that the temporal proximity must be very close." (internal citation omitted)).

Finally, Mr. Walczak claims disparate treatment in comparison to three non-Polish unidentified employees, because they were not terminated, but allowed to return to work following the completion of Employee Assistance Program counseling. *See* Pl.'s Opp'n at 15. But "[w]hen considering whether a plaintiff has raised an inference of discrimination by showing that she was subjected to disparate treatment, . . . the plaintiff must show she was 'similarly situated in all material respects' to the individuals with whom she seeks to compare herself." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (citing *Shumway*, 118 F.3d at 64). Mr. Walczak has neither identified these three other employees nor described any of the allegedly "more egregious" conduct they engaged in. *See* Pl.'s Opp'n at 15 ("In (3) other cases,

non-Polish employees who made actual threats were not disciplined for conduct that was more egregious than the conduct for which I was disciplined.").

The record evidence shows that Pratt & Whitney fires individuals for violating their policies without knowledge of their national origin or ancestry. Def.'s SMF ¶ 30 (describing three other employees who were terminated and the reasons for doing so, including one who "had repeated conflicts with coworkers requiring [Threat Management Team] intervention"). Second, there is no evidence in this record that these employees engaged in multiple threatening acts, as Mr. Walczak did, or that they refused Employee Assistance Program counseling, which Mr. Walczak did on each of the six prior occasions that HR recommended it. Mr. Walczak thus has not shown that these unidentified employees were "similarly situated employees who went undisciplined [like him, and] engaged in comparable conduct." *See Graham*, 230 F.3d at 40.

As a result, Mr. Walczak has failed to establish a causal connection between the allegedly pending grievance and his termination, and there is no genuine issue of material fact as to whether the Town Defendants retaliated against Mr. Miceli. *See Champion*, 76 F.3d at 485 (disagreeing with *pro se* plaintiff's argument that "the court was required to take all allegations in the complaint as true and to draw inferences therefrom in his favor").

Accordingly, his Title VII retaliation claim against Pratt & Whitney will be dismissed.

### D. The CFEPA Claims

Having dismissed all of Mr. Walczak's federal claims, the Court declines to exercise supplemental jurisdiction over his state law claims, and dismisses them for lack of jurisdiction. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."); *see, e.g.*, *Castellano v. Bd. of Trustees*, 937 F.2d 752,

758 (2d Cir. 1991) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1991) ("[I]f the federal claims are dismissed before trial . . . , the state claims should be dismissed as well.").

**IV.     CONCLUSION**

For the foregoing reasons, Pratt's motion for summary judgment is **GRANTED.**

The Clerk of Court is respectfully directed to close the case.

**SO ORDERED** at Bridgeport, Connecticut, this 21st day of February, 2020.


/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE